IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-044-FL

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NORTH CAROLINA STATE ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on defendant's motion to dismiss for failure to state a claim (DE 31). Also pending is plaintiff's motion for leave to proceed anonymously (DE 5). The issues raised are ripe for ruling. For the following reasons, defendant's motion is granted and plaintiff's motion is terminated as moot.

### STATEMENT OF THE CASE

Plaintiff, proceeding anonymously, commenced this action by complaint filed February 1, 2023, asserting claims for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681, et seq., arising from alleged sexual abuse by defendant's former director of sports medicine, Robert M. Murphy, Jr., ("Murphy"). That same day, plaintiff filed a motion for leave to proceed anonymously. On February 7, 2023, the case was reassigned to the undersigned.[1] Defendant moved to dismiss for failure to state a claim March 31, 2023, and plaintiff responded. Defendant also responded in opposition to plaintiff's motion to proceed anonymously.

---

[1] Related cases Locke v. North Carolina State University, 5:22-cv-344, and Doe II v. North Carolina State University, 5:23-cv-216, also are pending before the undersigned.

1

Thereafter, plaintiff moved to amend his complaint as a matter of course under Rule 15(a)(1)(B) and defendant took no position on the motion. The court granted leave to amend and terminated defendant's original motion to dismiss as moot. Plaintiff filed his first amended complaint on May 2, 2023, however that same day he filed a consent motion to amend his first amended complaint, citing a need "to correct inadvertent errors." (DE 27 at 1). The court granted leave and plaintiff filed his second amended complaint on May 17, 2023.

Defendant filed the instant motion to dismiss the second amended complaint on May 26, 2023, plaintiff responded, and defendant replied. In this posture, the issues raised are ripe for ruling.

## STATEMENT OF FACTS

The relevant facts are alleged in the complaint[2] as follows. Plaintiff was a male student-athlete enrolled at defendant North Carolina State University (NCSU), (compl. ¶ 18), at some point during Murphy's tenure as defendant's former director of sports medicine. (Id. ¶ 21). In 2015, plaintiff experienced hip pain. Under the guise of treating plaintiff's pain, Murphy allegedly directed plaintiff to undress, watched as plaintiff did so, commented on the size of plaintiff's penis, held and moved plaintiff's genitals with bare hands and without plaintiff's consent, and wrapped plaintiff's thigh, hip, and groin areas without compression shorts or underwear, all in contravention of common practice and without medical need. (Compl. ¶¶ 34, 37, 40, 41, 66(h)(iii)). Later that year, plaintiff was referred to Murphy for treatment of back pain, whereupon Murphy diagnosed the problem as originating from a tendon or muscle in plaintiff's groin area. (Id. 44-46). Under the guise of treating plaintiff's back pain, Murphy met with plaintiff on a Sunday, with no others present, for a "sports massage." (Id. 47-48). Murphy instructed plaintiff to remove his

---

[2] Throughout this order, references to the "complaint," (compl.) are to the second amended complaint at DE 30. Only the complaint in the instant case, and not in related cases, is considered.

compression shorts, directed him into an "all fours" position on a training table, and touched his groin area and anus, moving "his hands in a feeling motion that [p]laintiff knew could not be a legitimate massage technique." (Id. ¶ 57).

Sometime thereafter, Benjamin Locke, plaintiff in a related case before this court, reported Murphy's abuse to law enforcement. A subsequent investigation by defendant allegedly found that before 2016, NCSU head soccer coach Kelly Findley ("Findley") "came to believe that Murphy was engaging in what he suspected was sexual grooming of male athletes." (Id. ¶ 66(a)). In early 2016, Findley allegedly told senior associate athletic director Sherard Clinkscales ("Clinkscales"), that "Murphy was engaging in what he suspected was sexual grooming of male student-athletes." (Id. ¶ 66(b)). Additionally, the complaint alleges that in 2015 or earlier, Findley, NCSU assistant coach David Costa ("Costa"), and NCSU assistant coach Steven Cox ("Cox") "each became aware that Murphy was engaging in reportable sexual conduct with student-athletes, discussed Murphy's conduct with each other, and decided that Murphy's conduct was of a nature that it should be reported to the Athletic Director's staff." (Id. ¶ 67).

On August 1, 2017, "Murphy was removed as the designated athletic trainer for certain men's teams" and his duties were changed to be of a more administrative nature. (Id. ¶¶ 66(c)-(d)). In 2018, Murphy "was promoted to Associate Athletic Director and given a raise." (Id. ¶ 66(e)). Between 2019 and 2021, Murphy "conducted drug testing for male student athletes," and under the guise of drug testing Murphy "directed athletes to turn in a 360-degree circle" while "observing their genitals and naked bodies." (Id. ¶ 69). Murphy is no longer an employee of defendant. (See id. ¶ 71).

**COURT'S DISCUSSION**

1.      Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)[3]

2.      Analysis

Defendant NCSU argues that plaintiff's Title IX claim fails for failure to allege facts that, if true, would support an inference that it received actual notice of the alleged abuse. The court agrees. Where lack of notice is dispositive, the court does not address NCSU's argument that the claim is barred by the statute of limitations.

Title IX, which imposes liability on certain educational institutions in cases involving employees' sexual harassment of students, is "enforceable through an implied private right of action." Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 281 (1998). Under Fourth Circuit precedent,

> to establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that 1) [he] was a student at an educational institution receiving federal funds, 2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or

---
[3]      Internal citations and quotation marks are omitted from all citations unless otherwise specified.

pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

Jennings v. University of North Carolina, 482 F.3d 686, 695 (4th Cir. 2007) (en banc). Only the fourth element, whether there is a basis for holding defendant liable, is at issue in this case.

An educational institution may be liable for sexual harassment of its students by an employee only if "an official of the school . . . who at a minimum has authority to institute corrective measures on the [school's] behalf has actual notice of, and is deliberately indifferent to, the [employee's] misconduct." Gebser, 524 U.S. at 277. Actual notice is established for Title IX purposes when "a school official with authority to address complaints of sexual harassment and to institute corrective measures receives a report that can objectively be construed as alleging sexual harassment." Doe v. Fairfax County School Board, 1 F.4th 257, 262 (4th Cir. 2021). The institution must be "aware of an allegation that [an employee is] currently abusing a student[,] although the school [does] not need to know the identity of the student allegedly being abused." Id. at 265 (emphasis removed). Mere "allegations supporting a general, substantial risk of – or the potential for – ongoing or future misconduct by" an employee does not constitute sufficient notice for Title IX purposes. Id. (emphasis removed).

The United States Court of Appeals for the Fourth Circuit has found actual notice or lack thereof in several Title IX cases. For example, it found that a university had actual notice of sexual harassment by a soccer coach when the victim of harassment met with a university's "highest ranking lawyer," offering "vivid details" of the harassment and describing "intense feelings of discomfort and humiliation." Jennings, 482 F.3d at 700. Actual notice likewise has been found when school officials received a written and oral report from a student that she had been inappropriately touched on a school trip without her consent, confirmation from the alleged harasser, and multiple reports from students and parents. See Fairfax County School Board, 1

5

F.4th at 262; see also Doe by next friend Pullen-Smith v. Qually, No. 5:20-cv-523, 2021 WL 2546456, at *7 (E.D.N.C. 2021) (finding actual knowledge in a case of alleged sexual harassment by a student where the plaintiff notified her principal). Conversely, no notice was found in a case in which a former student informed a school principal that an alleged harasser was "a pedophile," a librarian reported inappropriate physical contact between that teacher and a student to the principal, and a teacher reported a tip from a neighbor that the alleged harasser "abused children." Baynard v. Malone, 268 F.3d 228, 234 (4th Cir. 2001).

The complaint does not allege facts permitting an inference that defendant had actual notice of alleged abuse by Murphy. According to the complaint, during or before 2015, head soccer coach Findley and assistant coaches Costa and Cox "each became aware that Murphy was engaging in reportable sexual conduct with student-athletes, discussed Murphy's conduct with each other, and decided that Murphy's conduct was of a nature that it should be reported to the Athletic Director's staff," (compl. ¶ 67), however, they "did not immediately report Murphy[] . . . to Title IX staff." (Id. ¶ 110). The complaint does not allege that the coaches possessed the authority to take corrective measures, and, other than the conversation discussed below, they do not appear to have reported Murphy's conduct to an official invested with such authority. Therefore, the requisite notice cannot be inferred on the basis of Findley, Costa, and Cox's alleged conduct.

The complaint also alleges that "[i]n early 2016, Findley told Senior Associate Athletic Director . . . Clinkscales,[4] that Murphy was engaging in what he suspected was sexual grooming of male student athletes." (Id. ¶ 66(b)). Faithful application of Fourth Circuit precedent precludes

---

[4] For purposes of this order, the court assumes without deciding that Clinkscales was "an official who has the authority to address the alleged discrimination and to institute corrective measures." Jennings, 482 F.3d 686.

an inference of actual notice merely on the basis of allegedly suspected conduct. See, e.g., Fairfax Cnty. Sch. Bd., 1 F.4th at 268 (rejecting contention that "a school acquires actual notice whenever a faculty member simply overhears gossip or a rumor concerning sexual harassment"). In this respect it is insufficient if an alleged report only gives rise to an inference of a "substantial risk . . . of ongoing or future misconduct." Id. at 265. Without an allegation of "an incident" of sexual harassment, id. at 267, Findley's communication of "what he suspected was sexual grooming" does not support a plausible inference of actual notice to defendant.[5]

Plaintiff asserts that "it is overwhelmingly likely that the coaches" used the euphemistic language of "grooming behavior" "out of embarrassment and reticence in formal settings." (DE 20 at 33). According to plaintiff, the coaches "surely must have known, and communicated, more particulars, if they were impelled to report the problem to Clinkscales." (Id.). These statements are speculations, not "factual matter," Twombly, 550 U.S. at 556, and the court is not bound to accept plaintiff's hypotheses about what the coaches "must have" known or communicated. (DE 20 at 33).

Plaintiff suggests that Murphy's reassignment to an administrative role in August 2017 gives rise to an inference of actual notice. However, such a reassignment is "merely consistent with," and does not "plausibly suggest[]," a violation of Title IX. Twombly, 550 U.S. at 557. The reassignment occurred over a year after Findley reported his suspicions to Clinkscales, (see compl. ¶ 66(c)), and in any event, the court has found no precedent to support the proposition that reassignment supports a finding of actual knowledge in the Title IX context.

---

[5] Plaintiff's contention in his brief that three members of defendant's coaching staff and defendant's associate athletic director were aware "that Murphy was strongly suspected to be a sexual predator," (DE 33 at 15), similarly fails to align with the Title IX notice requirement.

Plaintiff argues that "the coaches' failure to report to an . . . official with sufficient authority to address the discrimination was a violation of NCSU policy . . . amount[ing] to willful blindness." (DE 33 at 16). Violations of university policy, however, are not allegations supporting a finding of actual notice. Indeed, the coaches' alleged "failure to . . . report[] to the Title IX [c]oordinator as required" undermines plaintiff's claim that responsible parties knew about the abuse. (Id.; see also id. at 20) ("Had any of the coaches or Clinkscales reported their suspicions of inappropriate conduct to the Title IX office, NCSU employees . . . would have had an opportunity to respond appropriately.").

Additionally, plaintiff's reliance on Mercer v. Duke University, which held that the "source of the information [regarding abuse] is immaterial," is misplaced. 181 F. Supp. 2d 525, 540 (M.D.N.C. 2001) (overruled on other grounds). No part of this court's decision relies on the source of the information conveyed to defendant, rather, it is the substance, particularly the absence of any alleged incident of harassment, that is at issue here. In Mercer, both the university's president and its athletic director admitted at trial "that they were actually aware of [p]laintiff's claim" of discriminatory treatment. Id. Snyder-Hill v. Ohio State University, on which plaintiff also relies, is instructively distinguishable where "many students complained to [the defendant university] about [a team physician's] abuse," health center staff "were . . . aware of and received many complaints about [the physician's] examinations of male students," including a detailed report by a student wrestler, and "the head team physician had received at least five written reports about [the team physician's] misconduct." 48 F.4th 686, 691-92 (6th Cir. 2022).

In sum, plaintiff has failed adequately to state a claim for violation of Title IX based on the facts in his complaint. Accordingly, the court grants defendant's motion to dismiss plaintiff's claims and dismisses the case without prejudice.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 31) is GRANTED. Plaintiff's claim is DISMISSED for failure to state a claim upon which relief can be granted. Plaintiff's motion for leave to proceed anonymously (DE 5) is TERMINATED AS MOOT. The clerk is directed to close this case.

SO ORDERED, this the 11th day of September, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge